## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD O. HENRY,       )
          )
    Plaintiff,         )
          )
    v.               )       Civil Case No. 13-183 (RJL)
          )
SECRETARY OF THE       )
TREASURY, *et al.*,        )
          )
    Defendants.       )

**FILED**

SEP 2 6 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

(September 2*o*, 2017) [Dkts. ## 25, 26]

Former IRS contractor Richard O. Henry ("plaintiff" or "Henry") brings this action against the Secretary of the Treasury, the Commissioner of the Internal Revenue Service ("IRS"), and the IRS's Director of Personnel Security (collectively, "defendants" or "IRS") to challenge the IRS's decision to revoke plaintiff's "staff-like access" to IRS facilities and information systems. The IRS revoked plaintiff's access on the ground that plaintiff failed to register with the Selective Service before the age of 26 – a fact the IRS contends renders plaintiff ineligible for staff-like access under current IRS policy. Plaintiff asserts that the IRS violated the Administrative Procedure Act ("APA") by revoking his staff-like access in contravention of IRS regulations and precedent. *See* Compl. [Dkt. # 1].

Counts I and IV of the complaint have already been dismissed for failure to state a claim. *See* 2/29/16 Mem. Op. & Order 10, 17 [Dkt. # 15]. Currently before the Court are plaintiff's Motion for Summary Judgment [Dkt. # 26] on the remaining counts, Counts II and III, of the complaint and the IRS's Renewed Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment [Dkt. # 25]. Upon consideration of the pleadings, the evidentiary record, and the relevant case law, the Court agrees with the prior Memorandum Opinion and Order issued in this case that plaintiff's claims are justiciable and that there is subject matter jurisdiction over the action. On the merits, the Court concludes that the IRS is entitled to summary judgment because the agency did not violate the APA by revoking plaintiff's staff-like access due to his failure to meet the Selective Service registration requirement. Therefore, the IRS's Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Dkt. # 25] is DENIED in part and GRANTED in part, and plaintiff's Motion for Summary Judgment [Dkt. # 26] is DENIED.

## BACKGROUND

The facts required to resolve this case are undisputed. Plaintiff Richard O. Henry is an employee of Booz Allen Hamilton ("Booz Allen"). Pl.'s Stmt. Material Facts ("Pl.'s Stmt.") [Dkt. # 27], Ex. A, Decl. of Richard O. Henry ("Henry Decl.") ¶ 3. From 2001 to March 2012, plaintiff worked for the IRS as a contractor employee. *Id.* ¶¶ 3, 16. In that role, he was responsible for designing, developing, and implementing software information systems. *Id.* ¶ 3. In order to work as an IRS contractor, plaintiff required "staff-like access" to IRS facilities and information. *Id.* ¶ 4. IRS regulations define "staff-like access" as "[u]nescorted access to IRS owned or controlled facilities, information systems (passwords), security items and products (as determined by Treasury/bureau officials), and/or sensitive but unclassified information by contractor employees." Pl.'s Stmt., Ex. B, July 18, 2000 Internal Revenue Manual ("2000 IRM"), ch. 2, § 1.23.2.2.1.3(15), at 4.

Two primary sources of IRS policy and procedure govern the employment and privileges of IRS contract employees. First, the Treasury Security Manual sets forth minimum "investigative requirements for contract employees" who require "staff-like-access" to Treasury-affiliated facilities, such as IRS facilities. Defs.' Mot. Dismiss [Dkt. # 9], Ex. 1, Treasury Security Manual TDP 15-71 ("TDP"), ch. 2, § 2, ¶ 1. Second, and more importantly for purposes of this case, the Internal Revenue Manual ("IRM") provides additional details regarding when and how the IRS will investigate contractors to determine their eligibility and suitability for initial or continued staff-like access. *See generally* Defs.' Mot. Dismiss, Ex. 3, Apr. 4, 2008 IRM ("2008 IRM"), ch. 2. Each of those manuals is periodically updated with revised procedures and substantive requirements. *See, e.g., id.* at cover.

At the time plaintiff applied for staff-like access in 2001, his application was governed by the IRM then in effect, which was the 2000 IRM. The 2000 IRM set forth the procedures that the IRS would use when investigating whether a contractor should be granted staff-like access. Of pertinence here, those investigation provisions required all contractor employees to receive a background investigation prior to being granted staff-like access. 2000 IRM, ch. 2, § 1.23.2.2.2.3, at 7. The provisions also required all contractor employees to be re-investigated every five years "from the completion date of the most recent Background Investigation." *Id.* § 1.23.2.2.3(1), at 8. The 2000 IRM made clear, however, that the IRS reserved the right to investigate contractors "at any time during the period of access" to determine "whether they continue to meet the requirements for staff-like access." *Id.* § 1.23.2.2.8.1(1), at 17.

3

Pursuant to the investigation provisions of the 2000 IRM, the IRS investigated plaintiff to determine whether he should be granted staff-like access. Henry Decl. ¶¶ 3-4. As part of that investigation, plaintiff completed the "OF 306" form. *Id.* ¶ 5; *cf.* Defs.' Mot. Dismiss, Ex. 5, Henry 2011 OF 306 ("Henry OF 306"). That form asks whether the applicant is a male born after December 31, 1959, and, if so, whether he is registered with the Selective Service System. *See, e.g.*, Henry OF 306 at 1. If the applicant admits to *not* having registered before the age of 26, he must explain that failure to register on the form. *Id.* In his 2001 OF 306, plaintiff disclosed that he had not registered for the Selective Service. Henry Decl. ¶ 6. His failure to register with the Selective Service notwithstanding, the IRS granted plaintiff staff-like access in 2001. *Id.* ¶ 8.

In 2006, pursuant to the mandatory re-investigation requirements of the then-current IRM (which was the 2003 IRM), plaintiff underwent a second background investigation. *See* Pl.'s Stmt., Ex. F, Feb. 1, 2003 IRM ("2003 IRM"), ch. 2, § 1.23.2.3(1), at 7. Plaintiff again admitted his failure to register for the Selective Service and again was approved for staff-like access. Henry Decl. ¶¶ 10-11. In a January 2007 memorandum confirming that approval, the IRS informed plaintiff that, pursuant to the re-investigation provisions of the 2003 IRM then in effect, plaintiff would "require an update background investigation" by February 2012. Pl.'s Stmt., Ex. I, Mem. from IRS Assoc. Dir. Personnel Sec. to Contracting Officer's Tech. Representative (Jan. 29, 2007) ("Jan. 2007 IRS Mem.").

Then, in 2008 and 2011, the IRS made two changes to its IRM that are relevant to this case. First, the IRS established a new set of criteria that contractors must meet in order to be eligible for staff-like access. Those criteria include the requirement that "all males

born after 1959[] must be registered with Selective Service or have an exception." Defs.' Mot. Dismiss, Ex. 2, Nov. 15, 2011 IRM ("2011 IRM"), ch. 2, § 10.23.2.2(2), at 2; *see also* 2008 IRM, ch. 2, § 10.23.2.2(2), at 1. Second, the IRS changed the periodic re-investigation requirement. The 2008 and 2011 IRMs clarified that contractors in "moderate risk" positions would not be subject to a mandatory re-investigation every five years, but instead would need only to submit "updated Federal tax compliance checks and a FBI fingerprint check every five years." 2011 IRM, ch. 2, § 10.23.2.14(2), at 8; *see also* 2008 IRM, ch. 2, § 10.23.2.14(2), at 8. Unchanged, however, was the IRM provision noting that "[a]ll contractor employees shall be subject to investigation prior to being granted staff-like access" and "at any time during the period of access to ascertain whether they continue to meet the requirements for staff-like access." 2011 IRM, ch. 2, § 10.23.2.6(1), at 5; *see also* 2003 IRM, ch. 2, § 1.23.2.8.1(1), at 15. All three of those provisions – the registration requirement, the tax and fingerprint procedure, and the "at any time" investigation provision – remained in effect at all times relevant to this case.

In 2011, plaintiff was informed by Booz Allen that his IRS re-investigation was due by February 2012. *See* Henry Decl. ¶ 14; Pl.'s Stmt., Ex. Q, E-mail from Mona Peloquin, Strategy & Organization, Booz Allen, to Richard Henry (Oct. 21, 2011). In accordance with Booz Allen's instructions, plaintiff completed and submitted additional background investigation paperwork at the end of 2011. Henry Decl. ¶ 14. Plaintiff disclosed his failure to register with the Selective Service when completing the background check forms, explaining that he failed to register "on conscientious grounds." Henry OF 306 at 2. Unlike with his previous background checks, however, plaintiff's materials were evaluated under

5

the contractor eligibility requirements adopted in 2008 – including, as relevant here, the Selective Service registration requirement.

By letter dated February 2, 2012, IRS Director of Personnel Security Donna King proposed to deny plaintiff's staff-like access because the IRS had "determined that [he] may not meet the eligibility requirements for being granted access." Attach. A to Compl., Letter from Donna S. King, Director, IRS Personnel Security, to Richard O. Henry (Feb. 2, 2012) ("Feb. 2012 IRS Letter"). The letter explained that plaintiff's "condition which raises a concern and may be disqualifying in this case" was his "non-registration with Selective Service." *Id.* The letter gave plaintiff an "opportunity to respond in writing" and instructed plaintiff to "include an explanation of why you are not registered." *Id.*

Plaintiff responded by letter one week later. *See* Defs.' Mot. Dismiss, Ex. 6, Letter from Richard O. Henry, to IRS Personnel Security Dep't (Feb. 9, 2012) ("Henry Letter"). He explained that his failure to register "was not a willful act of civil disobedience." *Id.* Rather, he stated that "[a]t the time," he "did not fully realize the importance of registering and just kept putting it off until [he] had failed to do so before reaching the age of 26." *Id.* Plaintiff acknowledged that his explanation was "not a good excuse," but noted that he was "just trying to be honest here" and did not "have any better explanation." *Id.*

After reviewing plaintiff's response, the IRS made a final decision to deny plaintiff's staff-like access. *See* Attach. B to Compl., Letter from Donna S. King, Director, IRS Personnel Security, to Richard O. Henry (Mar. 20, 2012) ("Mar. 2012 IRS Letter"). Plaintiff, through counsel, asked the IRS to reconsider its decision. *See* Defs.' Mot. Dismiss, Ex. 7, Letter from Rachel L.T. Rodriguez, to Donna S. King, Director, IRS

Personnel Security (Apr. 18, 2012) ("Rodriguez Letter"). Plaintiff's counsel noted that the Selective Service registration requirement was reinstated at a time when plaintiff was in college and changed addresses frequently, meaning that any announcements likely "would have failed to reach him." *Id.* at 6. Those facts and others, according to plaintiff's counsel, indicated that plaintiff's failure to register was "not willful but excusable." *Id.*

The IRS declined to reverse its determination. In another letter, this time addressed to plaintiff's counsel, the IRS explained that, pursuant to the IRM eligibility provisions, Selective Service registration was a requirement for staff-like access for male contractors in plaintiff's position. Attach. C to Compl., Letter from Donna S. King, Director, IRS Personnel Security, to Rachel L.T. Rodriguez (May 16, 2012) ("May 2012 IRS Letter"), at 1. The letter went on to recount the conflicting explanations plaintiff had provided for his failure to register. *Id.* Specifically, in his February 9, 2012 letter, plaintiff acknowledged that he had knowingly put off registration until it was too late. *See id.* (citing Henry Letter). But in his 2011 background paperwork, plaintiff attested under penalty of law that he did not register "on conscientious grounds." *Id.* (citing Henry OF 306). After recounting those conflicting pieces of information, the letter concluded that plaintiff's "explanation failed to show by a preponderance of the evidence that his failure to register was neither knowing nor willful." *Id.* at 2. The IRS therefore stuck by its decision to deny plaintiff staff-like access. *Id.* Without staff-like access, plaintiff could not maintain his position as a contractor with the IRS. A few months after his departure from IRS, plaintiff was approved for staff-like access at the U.S. Census Bureau. Henry Decl. ¶ 17.

Plaintiff brought suit to challenge the IRS's revocation of his staff-like access. In his four-count complaint, plaintiff alleges that the IRS's decision was unlawful under the APA. *See generally* Compl. In a Memorandum Opinion and Order issued February 29, 2016, the judge previously assigned to this action denied the IRS's motion to dismiss Counts II and III of plaintiff's complaint for lack of subject matter jurisdiction, but dismissed Counts I and IV. *See* 2/29/16 Mem. Op. & Order 4-10, 12-14, 17. Currently before the Court are plaintiff's Motion for Summary Judgment on the remaining counts, Counts II and III, of the complaint and the IRS's Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

## STANDARD OF REVIEW

### A.    Motion to Dismiss

The IRS has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1). According to the IRS, this Court lacks subject matter jurisdiction over the action because plaintiff's claims relate to security decisions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and thus unreviewable under *Department of the Navy v. Egan*, 484 U.S. 518 (1988). Our Circuit has clarified, however, that the question whether an "agency action is committed to agency discretion by law" is properly analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1). *See Sierra Club v. Jackson*, 648 F.3d 848, 853-54 (D.C. Cir. 2011). I therefore apply the 12(b)(6) standard of review to the IRS's motion to dismiss.

Under that standard, the plaintiff's allegations, when read in a light most favorable to the plaintiff, must "raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). A court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). But a court need not accept "factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," nor must a court give credence to "plaintiff's legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (internal quotation marks omitted).

## B.   Summary Judgment

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When evaluating cross-motions for summary judgment, the reviewing court examines each motion "separately on its own merits to determine whether any of the parties deserves judgment as a matter of law. *Lee Mem'l Health Sys. v. Burwell*, 206 F. Supp. 3d 307, 322 (D.D.C. 2016) (internal quotation marks and brackets omitted). The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When reviewing the decision of an administrative body under the APA, the reviewing court generally will not resolve factual disputes, but instead reviews the decision as an appellate court addressing issues of law. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996); *Atl. Sea Island Grp. LLC v. Connaughton*, 592 F. Supp. 2d

1, 12-13 (D.D.C. 2008). In other words, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported" by the record "and otherwise consistent with the APA standard of review." *Remmie v. Mabus*, 898 F. Supp. 2d 108, 115 (D.D.C. 2012).

## C.    Administrative Procedure Act

The APA requires a reviewing court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "In other words, the question is not what [the Court] would have done, nor whether [the Court] agree[s] with the agency action," but "whether the agency action was reasonable and reasonably explained." *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 726 (D.C. Cir. 2017) (internal quotation marks omitted).

Under that deferential standard, an agency action will be set aside as arbitrary and capricious if the agency has failed to follow procedures required by law, failed to examine the relevant data and articulate an adequate explanation for its action including a rational connection between the facts found and the choice made, or failed to consider an important aspect of the issue. *See id.*; *Kisser v. Cisneros*, 14 F.3d 615, 618-19 (D.C. Cir. 1994). At a minimum, the agency must consider relevant data and articulate an explanation from which its "path may reasonably be discerned," even if the explanation itself is not "a model of clarity." *Banner Health v. Price*, 867 F.3d 1323, 1356 (D.C. Cir. 2017) (internal

quotation marks omitted). In short, the agency's decision is entitled to a "presumption of procedural regularity and substantive rationality." *Pharm. Research & Mfrs. of Am. v. FTC*, 790 F.3d 198, 212 (D.C. Cir. 2015). A court, moreover, must take "due account" of the "rule of prejudicial error" when reviewing allegedly unlawful agency action. 5 U.S.C. § 706.

## ANALYSIS

### A.  Motion to Dismiss

The IRS renews its argument, rejected by the court previously assigned to this action, *see* 2/29/16 Mem. Op. 12-14, that plaintiff's claims should be dismissed as non-justiciable under *Department of the Navy v. Egan*, 484 U.S. 518 (1988), because they implicate a security decision that is committed to the discretion of the Executive Branch. *See* Defs.' Mem. P. & A. Supp. Summ. J. ("Defs.' Mem.") 5-7.[1] Like the previous judge to consider this issue, I disagree.

In *Egan*, the Supreme Court held that the Merit Systems Protection Board did not have authority to review the substance of the Navy's decision to deny an employee a security clearance. 484 U.S. at 520, 529-30. Although accepting the presumption in favor of review as a "general proposition of administrative law," the Court noted that the presumption "runs aground when it encounters concerns of national security" such as the "sensitive and inherently discretionary judgment call" of whether to grant a security

---

[1] As previously noted, I evaluate the IRS's renewed motion under the Rule 12(b)(6) standard, not the Rule 12(b)(1) standard. That said, the differences between the standards matter little in this case. Under either standard, this Court may review the IRS's renewed argument. *See* Fed. R. Civ. P. 54(b). And under either standard, the IRS's argument fails because this Court has subject matter jurisdiction over plaintiff's claims and the complaint states a valid claim upon which relief may be granted.

clearance. *Id.* at 526-27. Noting that it is "not reasonably possible" for courts to "review the substance of such a judgment," the Court held that security clearance decisions were necessarily "committed to the broad discretion of the agency responsible" and thus unreviewable. *Id.* at 529; *see also Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999) (holding that "under *Egan* an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII").

In contrast to the security clearance decision at issue in *Egan*, the IRS's decision here does not involve a determination about who may access sensitive "information bearing on national security." 484 U.S. at 527; *see also Ryan*, 168 F.3d at 524. Indeed, the evidence in this case confirms that staff-like access is decidedly different than a security clearance, both when it comes to the investigations required to obtain it and the information it allows a contractor to view. *See* Pl.'s Stmt., Ex. V, Dep. of Donna S. King ("King Dep.") at 15 (a "security clearance is totally different in nature" than staff-like access); *see also id.* at 80.

To be sure, staff-like access does allow individuals to access some sensitive information not related to national security. Therefore, if plaintiff were challenging the *substance* of the IRS's staff-like access eligibility standards or an IRS eligibility decision, *Egan* would arguably control because it could be said that plaintiff would be asking a court "to review the substance of" a "sensitive and inherently discretionary judgment call" about who should be trusted to access IRS information. *Egan*, 484 U.S. at 527, 529. But plaintiff has made no such arguments to this Court. Instead, the contested issue here is a "procedural" one "divorced from any substantive security determination": Namely,

whether the IRS improperly declined to follow or explain certain procedures set forth in its Internal Revenue Manual. *Ryan*, 168 F.3d at 524. Those IRM procedures provide justiciable criteria against which to measure the IRS's action in this case. Put differently, resolving plaintiff's claims does *not* require this Court to "review the substance" or "validity" of an agency's "[p]redictive judgment" regarding an individual's authorization to access sensitive information. *Egan*, 484 U.S. at 529; *Ryan*, 168 F.3d at 524. Having concluded that I may review the merits of plaintiff's claims, I now turn to the cross-motions for summary judgment.

**B.     Summary Judgment**

Before examining plaintiff's APA challenge to the IRS's 2012 decision, it is worth clarifying the scope of the parties' dispute. By 2011, the IRS had adopted a new requirement applicable to contractors: To be eligible to receive staff-like access, all male contractors born after 1959 "must be registered with Selective Service" or have a valid "exception" for failing to register. 2011 IRM, ch. 2, § 10.23.2.2(2), at 1-2; *see also* 2008 IRM, ch. 2, § 10.23.2.2(2), at 1-2.

Plaintiff, a male born after 1959, admits that he did not register for the Selective Service. *See* Henry Decl. ¶¶ 6-7. It is also uncontested that the IRS revoked plaintiff's staff-like access based on his "non-registration with Selective Service." Feb. 2012 IRS Letter; *see also* May 2012 IRS Letter. Notwithstanding those facts, plaintiff contends that the IRS's decision to revoke his staff-like access violated the APA for two reasons: 1) the IRS contravened agency regulations by improperly subjecting plaintiff to a full background investigation in 2011 and 2) the IRS departed from agency precedent and failed to explain

and apply the proper standard when it revoked plaintiff's access based on his failure to register for the Selective Service. For the following reasons, I reject each of those arguments.

1. <u>The IRS's 2011 Investigation of Plaintiff</u>

Plaintiff's first challenge relates to how the IRS obtained the information regarding his failure to register for the Selective Service. Specifically, plaintiff contends that the IRS violated agency regulations by relying upon the superseded, pre-2008 IRM re-investigation provisions as the basis for subjecting him to a full background investigation in 2011. *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") 11-15. Plaintiff correctly notes, for example, that IRS correspondence regarding the need for plaintiff's 2011 investigation cites superseded provisions of the IRM. *See, e.g.,* Jan. 2007 IRS Mem. (citing 2003 IRM); Pl.'s Stmt., Ex. N, Mem. from Donna S. King, Director, IRS Personnel Security, to Contracting Officer's Technical Representative (May 5, 2011) (citing 2003 IRM). According to plaintiff, it was the information derived from the improper 2011 background investigation that led the IRS to revoke his staff-like access based on its Selective Service registration requirement.

The IRS counters that agency practice was to re-investigate all contractors in plaintiff's position – that is, contractors whose five-year re-investigation due dates were set prior to the 2008 change to the re-investigation provisions. For support, the IRS cites the deposition testimony of IRS Senior Technical Advisor David Waters. Based on his review of IRS records, Waters testified that contractors, like plaintiff, who occupied "moderate risk positions" and were "originally investigated prior to [the 2008] IRM

14

update . . . did, in fact, receive five-year re-investigations later." Defs.' Mot. Summ. J., Ex. A, Dep. of David Waters ("Waters Dep.") at 122:15-21. Waters produced a list to show that the IRS had a "consistent approach" of re-investigating individuals who were last investigated prior to the 2008 IRM update. *Id.* at 123:19; *see* Pl.'s Stmt., Ex. G, Defs.' Objs. & Resps. to Pl's 1st Set Interrogs. 6 (producing list). The IRS contends that this practice was permissible under agency regulations. *See* Defs.' Mem. 10.

Plaintiff does not dispute the Waters testimony that "it is the practice of the IRS to subject contractors to reinvestigation" if "their prior investigation was completed before the IRM April 2008 revisions." Pl.'s Opp'n to Defs.' Mot. 14 n.7. Instead, plaintiff protests that the IRS's practice is improper because it is not authorized by any "policy statement" and lacks a "reasoned basis." *Id.* at 14. Plaintiff is wrong on both points.

To start, the fact that the IRM does not specifically speak to the practice of pursuing re-investigations already scheduled does not mean that the IRS's practice "violat[ed] its own regulations." Pl.'s Mem. 12. The revised 2008 IRM specifies that, moving forward, contractors will not be required to undergo background re-investigations every five years. But it is unclear about the effect, if any, the altered re-investigation provisions have on investigations scheduled prior to the 2008 changes. Plaintiff insists that the alterations to the IRM prohibited the IRS from commencing with the 2011 investigation of plaintiff. Plaintiff's argument, however, rests on a faulty premise: The fact that the IRS's 2011 investigation of plaintiff was no longer *mandatory* under the applicable IRM does not mean, as plaintiff contends, that it was inconsistent with or *impermissible* under the applicable IRM.

Notably, were plaintiff's reading of the relevant regulations correct, a contractor who happened to have his latest background investigation prior to the 2008 establishment of the Selective Service registration requirement would be effectively immunized from review for continued eligibility. As Waters explained, the IRS did not adopt a policy that "grandfathered in" contractors in that manner. Waters Dep. at 123:18. Given the ambiguity regarding the IRM's effect on re-investigations already scheduled, the IRS's reading of its regulations – a reading that helps ensure that all contractors are in fact eligible for staff-like access under the new 2008 requirements – is entitled to deference. *See Taylor v. Huerta*, 723 F.3d 210, 213 (D.C. Cir. 2013) (agency interpretation of its own regulation "is to be accorded deference unless it is clearly contrary to the plain and sensible meaning of the regulation") (internal quotation mark and alteration omitted).

If the IRM makes one thing clear, moreover, it is that the IRS's 2011 investigation of plaintiff *was* allowed: Each and every version of the IRM cited by plaintiff contains a provision specifying that the IRS has broad power to investigate a contractor's continued eligibility for staff-like access "*at any time*." 2011 IRM, ch. 2, § 10.23.2.6(1), at 5 (emphasis added); *see also* 2003 IRM, ch. 2, § 1.23.2.8.1(1), at 15. Therefore, even accepting plaintiff's argument that the IRS initiated plaintiff's investigation under the wrong provision, plaintiff cannot show (as he must) that the IRS's error was "prejudicial" given that the IRS had the power to commence its investigation and indeed already had the information regarding plaintiff's failure to register in its possession. 5 U.S.C. § 706; *see*

*PDK Labs., Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004). Plaintiff's APA claim fails for that independent reason, too.[2]

In the final analysis, plaintiff's troubles arise from the IRS's 2008 adoption of the Selective Service registration requirement and the fact that he is not registered – not the manner in which the IRS became aware of his failure to register. Because agency regulations did not prohibit the IRS from obtaining information regarding plaintiff's Selective Service registration, the IRS's 2011 investigation of plaintiff did not violate the APA.

2. The IRS's Decision to Revoke Plaintiff's Staff-Like Access

Plaintiff makes two arguments challenging the actions the IRS took once it became aware of plaintiff's failure to register for the Selective Service. Unfortunately for plaintiff, however, neither has merit.

First, plaintiff argues that the IRS arbitrarily departed from its precedent when it revoked plaintiff's staff-like access on the basis of his failure to register despite plaintiff's ten-year history at the agency. That contention can be rejected swiftly, as it ignores that the Selective Service registration requirement was not established until 2008. *See* 2008 IRM at cover, "Nature of Changes," no. 4. What the IRS may or may not have done with respect to plaintiff's Selective Service information prior to 2008 is irrelevant because the

---

[2] As an alternative argument, plaintiff implies that the IRS should have investigated him using "solely the superseded provisions" of the 2003 IRM to determine his eligibility in 2011. Pl.'s Mem. 14. Plaintiff's own arguments, however, foreclose that option, as it is plaintiff who stresses that "each revision of" an IRM section "supersedes all prior regulatory provisions of that section." Pl.'s Reply Supp. Mot. Summ. J. 6.

Selective Service registration requirement did not exist at that time. *Cf.* Pl.'s Stmt., Ex. C., at 96:7-8 ("Selective Service registration would not have been checked" before 2008).

Second, plaintiff argues that the IRS's decision was arbitrary and capricious because the IRS "fail[ed] to adjudicate" or properly investigate whether plaintiff's failure to register for the Selective Service was "knowing or willful." Pl.'s Mem. 6. According to plaintiff, the "knowing and willful" standard – set forth in 5 U.S.C. § 3328 and implemented by 5 C.F.R. §§ 300.701-.707, among other regulations – applies to those contractors who have failed to register for the Selective Service. Under that standard, an individual's failure to register is disqualifying unless the individual can demonstrate by a preponderance of the evidence that he did not "kn[o]w the requirements of the law and deliberately refrain[] from complying" with those requirements. *United States v. Couming*, 445 F.2d 555, 557 (1st Cir. 1971); *cf. Dixon v. United States*, 548 U.S. 1, 5 (2006) (defining terms "knowingly" and "willfully"). Granting for sake of argument that the "knowing and willful" standard applies to contractors,[3] plaintiff's argument fails nonetheless.

As discussed, the February 2, 2012 proposed denial letter from the IRS gave plaintiff the opportunity to provide a written "explanation of why" he was not registered. Feb. 2012 IRS Letter. In response, plaintiff sent a letter to the IRS stating that his failure to register "was not a willful act of civil disobedience" but instead resulted from the fact that plaintiff "did not fully realize the importance of registering and just kept putting it off until [he] had

---

[3] Some of the evidence indicates that the IRS will excuse a contractor from the Selective Service eligibility requirement only when he has an official letter of exemption from the Selective Service. *See* Pl.'s Stmt., Ex. K, Dep. of Jenneth Rae Dalton at 67-68; King Dep. at 63:5-8. Plaintiff's claim would fail under that standard as well, as he does not purport to have an exemption letter.

failed to do so before reaching the age of 26." Henry Letter. Plaintiff acknowledged that his explanation "was not a good excuse," but noted he was "just trying to be honest" and did not "have any better explanation." *Id.* The IRS stated that plaintiff's response did not "mitigate" its concerns and denied plaintiff's access. Mar. 2012 IRS Letter.

At that point, plaintiff submitted more explanation regarding his failure to register, this time through an extensive memorandum to the IRS drafted by counsel. In the memorandum, plaintiff's counsel recounted the facts surrounding plaintiff's failure to register and argued that plaintiff's actions were "not willful but excusable." Rodriguez Letter at 6. Notably, not only did plaintiff's February and April explanations conflict with each other, they also conflicted with a third explanation plaintiff previously gave for his failure to register. Specifically, in plaintiff's 2011 OF 306 paperwork, plaintiff attested that he had failed to register "on conscientious grounds." Henry OF 306 at 2.

In May 2012, the IRS issued a final letter providing additional explanation of its decision to revoke plaintiff's staff-like access and denying plaintiff's request to reconsider that decision. The letter recounted the information the IRS had received from plaintiff, including his statements that his "failure to register was not an act of civil disobedience" and that he "did not realize the importance of registering and just kept putting it off until" it was too late. May 2012 IRS Letter at 1. The letter also recited plaintiff's inconsistent 2011 OF 306 statement that "he did not register on conscientious grounds." *Id.* After setting out that information, the IRS explained that plaintiff had failed to show that his failure to register "was neither knowing nor willful" and that a "final determination was made to deny his staff-like access." *Id.* at 2.

Plaintiff argues that the IRS did not adequately investigate whether his failure to register was "knowing and willful." According to plaintiff, the IRS should have followed the investigation procedures set forth in 5 C.F.R. §§ 300.701-.707. *See* Pl.'s Mem. 20-21. But all those provisions require is that an individual receive the opportunity to provide an "explanation of his failure to register." 5 C.F.R. § 300.705(d)(1); *see also id.* § 300.706(a). Plaintiff had an opportunity to explain his failure to register – indeed, he had *three* opportunities. *See* Henry OF 306; Henry Letter; Rodriguez Letter. Having received all of that correspondence, it is hard to see what additional investigation the IRS could have conducted.

Plaintiff also contends that the agency failed to adequately explain its decision to revoke plaintiff's staff-like access. Not so. For starters, the final letter from the IRS exhibits the agency's consideration of the "relevant data" – here, plaintiff's failure to register and his (varied) explanations regarding that failure. *State Farm*, 463 U.S. at 43.[4] The letter also articulates the basis for the IRS's final revocation decision. Specifically, the IRS: 1) referenced plaintiff's February 2012 letter, in which plaintiff implicitly conceded knowledge of the registration requirement and said he "just kept putting it off" until it was too late and 2) noted that plaintiff's 2012 explanations for his failure to register were different than his 2011 OF 306 explanation that he failed to register on "conscientious

_____

[4] Plaintiff asks this Court to ignore the analysis contained in the May 2012 IRS letter because some IRS representatives were unaware of the "knowing and willful" standard. *See* Pl.'s Mem. 16-17. But those representatives did not draft the May 2012 letter. *See* Dalton Dep. at 81:18-20; King Dep. at 77:13. Given the "presumption of procedural regularity" applicable to the IRS's final action, I decline plaintiff's invitation to ignore the statement in the May 2012 letter that the agency applied a "knowing and willful" standard and concluded that plaintiff's inconsistent explanations failed to satisfy that standard. *Pharm. Research & Mfrs. of Am.*, 790 F.3d at 212.

grounds." After recounting those two facts – facts indicating that plaintiff had knowledge of the registration requirement and may have been untruthful when attempting to explain his failure to satisfy the requirement – the agency concluded that plaintiff had "failed to demonstrate that his failure to register was neither knowing nor willful." May 2012 IRS Letter at 2. When properly viewed in context, the letter contains sufficient explanation to allow "the agency's path [to] reasonably be discerned." *Banner Health*, 867 F.3d at 1356 (internal quotation marks omitted). Applying the "narrow" standard of review of agency reasoning, *State Farm*, 463 U.S. at 43, I easily conclude that the IRS's decision to revoke plaintiff's staff-like access was "reasonable and reasonably explained" and was neither arbitrary nor capricious under the APA, *Americans for Clean Energy*, 864 F.3d at 726 (internal quotation mark omitted).

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's Motion for Summary Judgment and DENIES in part and GRANTS in part defendants' Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge